Sneed, J.,
delivered the opinion of the Court.
■ The bill is brought by the executor of the last will and testament of George Squibb, deceased, to obtain a construction of a clause in his will, and the. directions of the Court in the disposition of a legacy of $500, therein bequeathed to the benefit of the respondent, Jennie Burts. The clause is as follows: “I further direct that my negro girl, Jennie, shall, at the decease of my wife, be set *601 free, and sent to Liberia or some other suitable place; and to meet the expense thereof, I hereby , direct my executors to set apart from the sale, property, as may best suit my wife, Mary Squibb, the sum of five hundred dollars, which shall be placed in faithful hands, to inure to the benefit of said Jennie.” The will was executed on the 30th of October, 1852, and the above is a literal copy of the clause in controversy.
The bill alleges that Jennie was the slave of the testator, and that the bequest was upon the condition that Jennie should remain in the service of the testator’s wife until’the death of the latter; that the said Jennie had not observed said condition, in that she had abandoned her mistress in September, 1863, claiming to be free under the public events of the late civil war; that she had forfeited the bequest, and that, as by the changed condition of things, no expense would be necessary in the transportation of said Jennie to Liberia or elsewhere, the complainant asks the direction of the Court as to the disposition of said sum of five hundred dollars, which he insists was intended solely to defray the expenses of placing Jennie in a free country.
The widow, Mary Squibb, to whom the whole estate is given for life'; Elijah IT. Miller, the devisee in remainder of the real estate, and the said Jennie and her husband, Henderson Burts, with whom she has intermarried since the execution of the will, are made parties defendant, with a view to interplead as to their respective rights. It is stated at the bar that Mary Squibb died since the service of process upon her, but there is no proof thereof in the record. The bill does not waive *602 the answers under oath, and the only answer filed, is by Henderson Burts, and Jennie, his wife, which is under oath.
The answer denies the abandonment, and avers that the respondent, Jennie, did remain with her said mistress, and faithfully serve her, until about the latter part of. the war, when her said mistress ordered and commanded her to leave the place; and in obedience to said positive orders, she did leave it; and the respondent, Jennie, insists, that, though she had acquired her freedom in a manner not contemplated in said will, her rights under the same could not .be impaired. There was no testimony in the cause, but it was submitted and determined on the bill and answer.
The Chancellor held that the respondent, Jennie, was entitled to the bequest of $500, with intérest, from the rendition of the decree, and awarded execution in behalf of the said Jennie and her husband, to be levied of the assets of the testator in the hands of the complainant. Upon the question of interest, the decree is as follows: “But because no steps have been taken by the said Jennie, or any other person for her, to collect said legacy, or to establish the liability of the executor of said will to pay the samé, and from the language of said provision, the said executor was fully justified in withholding the payment of the same; the the Court is further pleased to declare, that the said Jennie is not entitled to the interest on the same, until the rendition of this decree.” The complainant alone has appealed.
From the earliest period in the jurisprudence of this *603 State, the courts have guarded with the utmost jealousy-, the right of freedom, when asserted by a slave. The technical doctrines of the common law, touching gifts of other species of property, by deed or by parol, have been made to yield in favorem libertatis, whenever that paramount right was placed in -peril by the rigid adherence to such rules. While, during the existence of the institution of slavery, the rights of both master and slave were protected and enforced; yet the most humane and enlightened policy pervaded the spirit of our laws, even when the right of freedom was asserted on the one hand and denied on the other. Thé adjustment of rights growing out of a species of property, characterized by the Court in Henderson v. Vaulx, 10 Yer., 30, “as a peculiar property, and a property in intellectual, moral and social qualities, in skill, fidelity and gratitude, as well as in capacity for labor,” might well invoke, and even commend a relaxation of the severe rules of property, known to the common law. Thus, it has been held that if there be in' a will a bequest of a present right of future freedom, to be enjoyed after the determination of a life estate in the slave’s services, coupled with a contingent power of disposal in the legatee of the services, and there be doubt as to the construction of the will, the power of disposition must be construed to be subordinate to the higher and more important right of freedom. Jacob v. Sharp, Meigs R., 114. And so, when the provisions of a statute made it an imperative condition of emancipation, that the liberated slave should be transported to the *604 western coast of Africa/ and the testator directed that all his slaves should be set free and sent, at the expense of his estate, to a free State, it was held that the freedom of the slave was the primary object of the testator, which could not be defeated by the mere fact that the sending the slaves to a free State of this Union, is inconsistent with laws or comity of this State; that the bequest of freedom was a distinct and substantive thing, which no power but that of the State can question. Boon v. Lancaster, 1 Sneed, 578. And on account of a strong desire of a testator, evinced by frequent repetitions in his' will, for the emancipation of his slaves, that intention was made to prevail over an express condition, that if they could not, under the laws, remain in the State, they should go to a named legatee. Lewis v. Daniel, 10 Hum., 314, et vid. Laura Jane v. Hagen, 10 Hum., 332; Lewis v. Simonton, 8 Hum., 188; Hartsell v. George, 3 Hum., 255; McCloud et al v. Chiles et al., 1 Cold., 248.
It is said that the great rule in the construction of wills is, that the intention of the testator, ascertained from the particular words .used, from the context, and from the general scope and purpose of the instrument, is to prevail and have effect. Williams v. Williams, 10 Yer., 20, 29. To this rule, it is held that all others except those founded upon public policy, and the necessity of sustaining established principles of law, are not only subordinate, but auxiliary. Henry v. Hogan, 4 Hum., 210; Thompson v.. McKisick, 3 Hum., 631.
The testator in this case, directs that his negro girl, *605 Jennie, be set free at the death of his wife, and sent to Liberia or some other suitable place; and to meet the expense thereof, his executor is directed to set apart five hundred dollars, which shall be placed in faithful hands, to inure to the benefit of the said Jennie. The primary object of the testator was the emancipation of the respondent. The words, that she shall be set free at the death of his wife, while they import a desire, on his part, that she should remain with his wife during the life of the latter, do not, in the opinion of the Court, impose any condition or restriction upon the bequest of freedom. It is an absolute present bequest of freedom, vesting at the death of testator, to be enjoyed in futuro. Ifj indeed, the condition alleged in the bill had appeared in the express terms of the will, yet the respondent, in her answer, has fully vindicated herself for its non-performance; and, in the state of the pleadings, her answer is conclusive. Her right of freedom being thus vested, can its incident, the right to demand and receive the pecuniary legacy, if it be a legacy, be defeated' by the unforeseen result of a civil war, by which her freedom and its enjoyment were consummated, in a manner not contemplated in the will? We think not. The will had invested her with the right of freedom, of which nothing but the sovereign power could divest her; its enjoyment was postponed, but the right to the pecuniary bounty was a part of the bequest of freedom, and was intended to enable her to enjoy her liberty, when the right to enjoy had vested. The right of enjoyment came in advance of the time indicated in the will, and by a change in the fundamental *606 laws of the State, in which the right of property in slaves was forever abrogated and destroyed. From and after that time, the former mistress had no right to the services of the respondent. Her vested right to freedom, under the will, had now ripened into an unrestrained enjoyment; and, at the proper time, she had a right to demand and receive the pecuniary legacy. The intention of the testator, it is true, was, that out of the five hundred dollars the expenses of her transportation to Liberia or some other suitable place, should be paid; but it is manifest, from the last words of the clause, that the testator did not contemplate the absorption of the whole amount in defraying the expenses of her transportation. The words, “shall be placed in faithful hands, to inure to the benefit of the said Jennie,” mean something more than this. It is the declaration of a trust, and impresses the bequest with the character of a trust fund, out of which the respondent's expenses, to some suitable place for the enjoyment of the paramount gift of freedom, was to be paid, and the balance in some “faithful hands,” to be held for her benefit.
The Chancellor was of opinion, it seems, that the respondent, Henderson Burts, the husband, would not be an unfaithful trustee to his wife, and awards execution for their benefit, without more. We • feel that our interpretation of the intentions of the testator would not be fully carried out, without a modification of the decree to the extent of having the fund, when paid in, invested in such manner as better to secure it for the use of the said Jennie, under the order of the Court, as the tes *607 tator evidently did not intend that it should be paid to her in person. With this modification, the decree is affirmed, and the cause remanded for further proceedings.